## THE P. F. MARTIN.
### No. 5588.

District Court, E. D. Virginia.
Oct. 9, 1933.

Baird, White & Lanning, of Norfolk, Va., for libelant.

Hughes, Little & Seawell, of Norfolk, Va., for libelee.

WAY, District Judge.

In the above-entitled case, I have concluded from the evidence that the collision in question was caused by the unseaworthy condition of the tug P. F. Martin, in that the link in the steering chain, which broke, was defective in manufacture and unfit for the use to which it was then being applied; that the presence of the defective lap link in the steering chain is directly attributable to the failure of the person who ordered the lap links, for use on the tug P. F. Martin, or any one else representing that vessel, in ordering the links to specify links of material and workmanship known or reputed to be reasonably fit and proper for the use to which they were to be applied and to the failure of petitioner's employees properly to inspect and test the lap link in question before inserting it in the steering chain.

Stated another way: The evidence shows clearly that an order was given to Swan, the dealer, by Renshaw through Hutson, representing the tug, for one dozen lap links, without specifying any particular brand, make, grade, or quality of link, or otherwise imposing any requirement upon the dealer to furnish links reasonably fit and proper for the intended use and without specifying the intended use. This conclusion is illustrated by the testimony of Renshaw (Transcript, pp. 27, 28) and Swan (Transcript, pp. 70–72). It is apparent from an inspection of the links introduced as exhibits that an indifferent lot was supplied and accepted. Furthermore, the evidence signally fails to show that any reasonable or proper inspection of these lap links was made (Renshaw, p. 27) or that the link which broke was ever adequately tested before it was permanently inserted in the steering chain. An inspection of the links in evidence corroborates the testimony of the witness Mirfield (Transcript, p. 265) to the effect that the broken link "is just an ordinary commercial link" that may be found in hardware stores generally. It is a significant fact that the manufacturer of the link which broke, has not been identified.

■ Under the circumstances, I am forced to the conclusion that the collision was not the result of an inevitable accident as contended by petitioner, but rather that it is directly attributable to the causes above referred to, and that the petitioner should be held responsible for the damages to the steamship Michael Tracy, at least to the extent of the value of the tug P. F. Martin immediately following the collision.

■ With respect to the petition to limit liability to the value of the tug, I am of opinion this relief should be granted. While the evidence discloses negligence on the part of those who purchased and installed the defective link in the steering chain, it fails signally to show that Hutson, who had charge of purchasing the links in question, stood in the place of the officers of the corporate owner, and had such general control of its affairs that his knowledge, or rather lack of knowledge, was that of the owner. " 'Mere negligence, pure and simple, in and of itself,' does not establish privity or knowledge. To do that, there must be something more than mere thoughtlessness or casual oversight." The Virginia (D. C.) 264 F. 986, 997, affirmed (C. C. A.) 278 F. 877. Hutson, at most, it seems to me, was only a subordinate employee of limited authority, and his negligence consisted of mere thoughtlessness or casual oversight, notwithstanding the admitted fact that the duty, thus performed indifferently, related to the repair of a vital part of the tug.